## PORTER *against* TUDOR and another :

### IN ERROR.

*D.*, who was indebted to *A.*, *B.* and *C.* severally, and insolvent, was the owner of four shares of the stock of the *Phoenix Bank*, standing in the name of *E.* his wife ; and *F.* and *G.* the minor children of *D.*, owned each four other shares, standing in their respective names. *A.*, *B.* and *C.*, successively, attached the twelve shares as the property of *D.* They then agreed, that these shares should be so divided, for the purpose of securing their respective debts, that *A.* should have seven, *B.* two, and *C.* three ; and that application should be made to *D.* to transfer them accordingly ; who executed separate powers of attorney to carry the arrangement into effect. In each power, the subject of transfer was described as so many " shares of bank stock out of the twelve shares in the *Phoenix Bank* standing in the name of my children *F.*, *G.* and *E.*, I being their parent and lawful guardian, and having full and legal power to give this authority, and said children being minors under the age of twenty-one years." The attorney made the transfer on the books of the bank, pursuant to the power ; *A.*, *B.* and *C.* being present, and agreeing to relinquish their respective attachments of the stock. *A.* and *B.* thereupon neglected to levy their executions against *D.* on any part of this stock ; but after their liens had expired, *C.* levied his execution on the four shares which stood originally in the name of *E.*, and had them sold and the avails applied in satisfaction of his debt. On a bill in chancery brought by *A.* against *C.* for these four shares, it was held, 1. That the power

HARTFORD LAW LIBRARY

*Hartford,*
*July, 1833.*

Porter
*v.*
Tudor.

executed by *D.* embraced only the shares of his children, having no operation on those owned by him in right of his wife ; 2. that *D.* under these circumstances, could not, as parent or guardian, dispose of the shares of his children ; 3. that the consideration of the agreement betweeen *A. B.* and *C.* having entirely failed, without any fault on the part of *C.*, the subsequent proceedings of *C.* were no breach of good faith ; and therefore, the bill was dismissed.

THIS was a bill in chancery, tried at *Hartford, September* term 1832, before *Hosmer*, Ch. J.

On the 8th of *June,* 1829, *Philo Dickinson* was indebted to *Solomon Porter,* the plaintiff, in the sum of 700 dollars. He was indebted, at the same time, to *Charles Sigourney,* and also to *William W. Tudor* and *Henry S. Tudor,* the defendants, in other sums ; and was then, and continues to be, insolvent. Twelve shares of the stock of the *Phoenix Bank* were claimed, by these creditors, to be the property of *Dickinson,* their debtor. Of these four were his, and stood in the name of his wife, *Delia Dickinson ;* four belonged to and stood in the name of *Everard B. Dickinson,* and the other four belonged to and stood in the name of *Julia Ann Dickinson,* minor children of *Philo Dickinson.* The plaintiff first attached the twelve shares ; afterwards, on the same day, *Sigourney* attached them ; and a day or two afterwards, the defendants attached them, to secure their respective debts.

The plaintiff, *Sigourney* and the defendants then agreed, that the twelve shares should be divided between them, so that the plaintiff should have seven shares, *Sigourney* two shares and the defendants the remaining three shares ; and that application should be made to *Dickinson* to transfer them accordingly. *Dickinson* assented to this arrangement, and in pursuance thereof, executed to the plaintiff the following power of attorney : " Know all men by these presents, that I, *Philo Dickinson* of *Belchertown* in the state of *Massachusetts,* have appointed and constituted, and by these presents, do appoint and constitute *George Beach* Esq., cashier of the *Phoenix Bank* in *Hartford, Connecticut,* my true and lawful attorney, in my name and in my behalf, to transfer to *Solomon Porter* in said *Hartford,* seven shares of bank stock out of the twelve shares in said *Phoenix Bank* standing in the names of my children *Julia Ann, Everard B.* and *Delia Dickinson,* I being their parent and lawful guardian, and having full and legal power to give this authority to said *Beach,*

and said children being minors, under the age of twenty-one years ; hereby ratifying and confirming said *Beach's* acts, in pursuance of this power of attorney. Dated at *Belchertown*, this 10th day of *June* 1829.     *Philo Dickinson*, [L.S.]"

*Dickinson*, at the same time, executed powers, in the same form, for the transfer of two shares to *Sigourney* and three to the defendants. On the 11th of *June, Beach*, by virtue of these powers, transferred, on the stock book of the bank, the twelve shares, in conformity to the arrangement, to be held by the assignees as security for their respective debts ; they being present, and agreeing to relinquish their attachments of the stock. The plaintiff and *Sigourney* thereupon omitted to levy the executions, which they respectively obtained in their suits against *Dickinson*, on any part of the twelve shares, and permitted their liens by virtue of their attachments to expire. Afterwards, while the lien of the defendants, by virtue of their attachment, continued, they levied their execution on the four shares which stood in the name of *Delia Dickinson ;* these were regularly sold at the post ; and the avails were applied in satisfaction of their debt.

The bill sought a postponement of the defendants' title, and an injunction against proceedings at law.

The facts above stated being found, the superior court dismissed the bill ; and thereupon the present writ of error was brought.

*Toucey* and *S. H. Huntington*, for the plaintiff, contended, 1. That the plaintiff had a *legal* title to the four shares in question. The power of *Dickinson* to transfer his own stock standing in the name of his wife, is incontrovertible ; and the record shews an *actual* transfer of them on the books of the bank, by *Beach*, his attorney. Is not the power of attorney applicable to these shares ? It describes truly the bank, the number of shares, and the names in which they stood ; there were no other shares that could be embraced in the description ; there was no other *Delia Dickinson* than the plaintiff's wife ; there was no patent or latent ambiguity. The word " children" in the power may be construed to extend only to *Julia Ann* and *Everard B*. But if it refers to *Delia Dickinson*, it is mere surplusage ; and a redundant and super-

Porter
v.
Tudor.

fluous description, inapplicable to an object well ascertained, does not vitiate.   3 *Stark.* 1024.

2.   That if the legal title be not in the plaintiff, he has still an *equitable* title.   The defendants' attachment ought to be removed.   They consented that the plaintiff should take these shares, by transfer, discharged of their lien ; and so induced the plaintiff to relinquish his prior lien.   *Wendall* v. *Van Rensellaer,* 1 *Johns. Chan. Rep.* 344.   *Broome* v. *Beers,* 6 *Conn. Rep.* 198.   *Storrs* & al. v. *Barker,* 6 *Johns. Chan. Rep.* 166.

*N. Smith* and *W. W. Ellsworth,* for the defendants, insisted, 1. That the power of attorney executed by *Dickinson,* conferred no authority to transfer the stock in question. *Dickinson* did not authorize the sale of his own stock or his wife's ; but he acted solely as the guardian of his children, and transferred their stock, or none.

2. That the defendants have done nothing, which ought in equity to postpone their legal title.   The agreement between the creditors, is all that is relied upon for this purpose ; and the basis of that agreement failed.   The defendants found the stock not disposed of according to the agreement ; and took it by execution.   Why should they not ?   They agreed to abandon their lien only in consideration of their having three shares out of the twelve.   But they, with the other parties, were totally defeated in their object ; they got nothing ; the whole arrangement failed.   They were all then at liberty to pursue their legal remedies as before.

CHURCH, J.   *Porter,* the plaintiff, as the first attaching creditor of *Philo Dickinson,* obtained a preferable lien upon the bank shares attached.   This lien afterwards expired, by reason of *Porter's* neglect to levy the writ of execution, which followed from the attachment, within the time prescribed by law. But he claims, nevertheless, that as against the defendants, he has an equitable lien upon the four shares standing in the name of *Delia Dickinson,* by virtue of a transfer of the same to him, made by *Beach,* under the power of attorney for that purpose, executed by *Philo Dickinson,* in execution of an arrangement into which the defendants, *Sigourney* and himself had entered.   And whether the plaintiff acquired any

right to these four shares under that power and the execution thereof by *Beach*, presents the first and chief question for consideration.

It appears from the facts found by the superior court, that when the arrangement between the attaching creditors was made, and when the power of attorney was executed, there were standing on the books of the *Phoenix Bank* in the names of *Everard B. Dickinson* and *Julia Ann Dickinson*, minor children of *Philo Dickinson*, more than seven shares of its stock.  To determine whether *Beach* executed the authority conferred upon him, by the power of attorney made by *Philo Dickinson*, in transferring to the plaintiff four shares of said stock standing in the name of *Delia Dickinson*, the wife of said *Philo*, it is only necessary to refer to the power itself. *Dickinson* constituted *Beach* his attorney to transfer to the plaintiff, as he says, "*seven* shares of bank stock out of twelve shares standing in the name of my *children, Julia Ann, Everard B.* and *Delia Dickinson*, I being the parent and lawful guardian, and having full and legal power to give this authority to said *Beach*, and said *children* being minors under the age of twenty-one years." It is very obvious from the language thus used, that *Dickinson*, in giving the power, acted only for others, and not for himself ; and in no other character or capacity than as parent or guardian of his children. When describing the *twelve* shares, from which the *seven* shares of his children are to be taken, he describes them as twelve shares standing on the books of the bank in the names of *Julia Ann, Everard B.* and *Delia Dickinson ;* and as matter of description this was true.  But when he speaks of the seven shares to be transferred, he speaks only of the shares of his children ; because he refers only to his power to convey as being that of parent or guardian, and not as a power belonging to him, as husband, or in his own right as owner of the bank stock ; and he avers a fact, which it was necessary should exist, to give him even a colourable right to convey, that his children were minors under the age of twenty-one years.  From this view of the power of attorney, I think it evident, that *Beach* derived from it no authority to transfer to the plaintiff the four shares of stock standing in the name of *Delia*, the wife of *Dickinson*, and which did not in fact belong to his children.

The other powers executed at the same time, to enable *Beach* to convey to *Sigourney* two shares, and to the defendants three shares of said stock, were in the same form, and conferred upon *Beach* no power to transfer to either of said creditors the shares belonging either to *Dickinson* or his wife.

These creditors of *Dickinson* made their arrangement respecting the distribution of the twelve bank shares, under a misapprehension of the rights and power of *Dickinson* over the shares standing in the name of his children. They probably supposed, if these shares did not in truth belong to him, yet as parent and guardian he could transfer them. In this they were mistaken. As parent, he could not dispose of the *property* of his children ; and as guardian, he could not do so, for the payment or security of his own individual debts to creditors, who had knowledge of the facts. *Kline* v. *Bebee*, 6 *Conn. Rep.* 494. *Genet* v. *Tallmadge*, 1 *Johns. Ch. Rep.* 3. *Field* v. *Schieffelin* & al. 7 *Johns. Ch. Rep.* 150. *Miles* v. *Brydon*, 3 *Pick.* 213.

Subsequent events showing that the shares standing in the names of the children were in fact the estate of the children, the attaching creditors afterward transferred them back again, leaving only the shares standing in the name of *Delia*, to be the subject of contention. And as to these the plaintiff claims, that he had, by his first attachment, acquired a preferable lien ; that he relinquished it only in fulfilment of an agreement regarding the whole twelve shares, including these, to which agreement the defendants were parties ; and that the defendants, in violation of that agreement, pursued their demand against *Dickinson* to judgment and execution, and by a levy and sale, appropriated to themselves the entire avails of the shares standing in the name of *Delia Dickinson*. Under these circumstances, the plaintiff supposes, that although he acquired nothing by virtue of the transfer of the shares by *Beach ;* yet that the defendants ought in equity to restore him to his original priority of claim upon these shares. And this claim of the plaintiff presents the second question for consideration.

The plaintiff, having lost his legal preference, by neglecting to pursue his attachment, and having acquired nothing by the pretended transfer of *Beach*, stands like every other creditor of *Dickinson*, who may have suffered by his insolven-

cy, unless it be true, that he has been defeated of his legal or equitable claims upon the four shares in question, by some act or neglect of the defendants, of which a court of equity can take cognizance. But I cannot perceive wherein he has been thus defeated.

*Hartford*,
July, 1833.

Porter
*v.*
Tudor.

The arrangement made between the plaintiff, *Sigourney* and the defendants, regarding the security of their respective claims against *Dickinson*, by the distribution of the bank shares among themselves, was not induced, by any act or representation of the defendants. It was made in good faith; and there was no concealment of any fact, of which either parties had knowledge. It was agreed, to be sure, that all parties should suspend the further prosecution of their attachments; but this was rather the consequence than the cause of the arrangement; and the consideration of this agreement entirely failed, and that too without any fault of the defendants. All parties acted upon the supposed validity of the security afforded by the transfer of the bank shares by *Beach*; and therefore, it was, that the plaintiff and *Sigourney* suffered their liens to expire, before they knew that the act of *Beach* conveyed nothing; and the defendants would have done the same, had not this discovery been made before it was too late for them to proceed under their attachment. At a time, then, when the plaintiff had ceased to have any claim upon the estate in question, the defendants proceeded to sell it; and by this act the plaintiff has lost nothing; for he had no interest in the estate to lose. And if the defendants had, as the plaintiff claims they ought, suffered their lien also to expire, the plaintiff, by this, would neither have saved nor gained any thing. The only consequence would have been, that these bank shares, now saved to one of the parties to this arrangement, would then have been lost to all of them, and left to the attachment of some other and more vigilant creditors of *Dickinson*.

Besides, the chief purpose of the agreement regarding the distribution of the bank shares, was, that each attaching creditor should receive a portion. But to grant the prayer of this bill, would defeat this object, by bestowing upon the plaintiff the whole of what the parties intended should be divided between them. And if the court supposed, that the four shares in question could, upon any principles of equity, be now ap-

*Hartford,*
*July, 1833.*

*Porter*
*v.*
*Tudor.*

portioned, it seems clear, that it cannot be done under this bill, to which all of the persons interested are not parties.

I am, therefore, of opinion, that there is nothing erroneous in the decree of the superior court.

DAGGETT, Ch. J. and PETERS and BISSELL. Js., were of the same opinion.

WILLIAMS, J., having an interest in the question, declined giving any opinion.

Judgment affirmed.